UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| MARYANN WOOD, | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | C.A. No. 16-235M |
| | : | |
| NANCY A. BERRYHILL, ACTING | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
|     Defendant. | : | |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

    This matter is before the Court on Plaintiff's motion to reverse the Commissioner's decision denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under §§ 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (the "Act"). Plaintiff claims that she is disabled due to the after-effects of colon cancer, which was treated with surgery and chemotherapy and, she alleges, left her with anxiety, neuropathy and bowel problems. Her motion contends that the Administrative Law Judge ("ALJ") erred in that his Step Two determination, his residual functional capacity ("RFC")[1] finding and his Step Five determination are not supported by substantial evidence. Defendant Nancy A. Berryhill ("Defendant") has filed a motion for an order affirming the Commissioner's decision.

    The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having reviewed the entire record, I find that the ALJ's findings are sufficiently supported by substantial evidence and recommend that

---

[1] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

Plaintiff's Motion for Order Reversing the Commissioner's Decision (ECF No. 9) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 12) be GRANTED.

I.  **Background**

Born in 1969 and a high school graduate, Plaintiff was forty-two years old on her alleged onset date of January 30, 2012. Tr. 34-35, 70, 80. Until she was diagnosed with colon cancer, she had worked as a vault clerk at a jewelry company for seventeen years. Tr. 36-37, 212, 218, 280. On January 31, 2012, Plaintiff underwent surgery for sigmoid colon cancer. Tr. 298. Shortly after the surgery, she established treatment with a primary care physician, Dr. Olga Tverskaya, who diagnosed "unsp[ecified] constipation," as well as that she "feels very anxious" as she anticipated chemotherapy, which was about to begin. Tr. 319. Throughout the period under review, Dr. Tverskaya continued to note Plaintiff's anxiety and to treat it with medication. At one appointment, Dr. Tverskaya recommended that Plaintiff see a psychotherapist and psychiatrist, but there is no evidence suggesting that she ever did. Tr. 311. As far as the record reflects, Plaintiff's only mental health treatment was the medication for anxiety prescribed by Dr. Tverskaya. See Tr. 360.

In March 2012, Plaintiff initiated chemotherapy with an oncologist, Dr. John Przygoda, who noted that she was very anxious about the treatment. Tr. 354. However, by September 2012, Dr. Przygoda advised that she had completed chemotherapy and that her only remaining issue was "symptoms of a peripheral neuropathy affecting primarily her feet . . . [which] does not interfere with her activity level and has not resulted in any decrease in her quality of life. It has not impaired her performance." Tr. 358. Dr. Przygoda specifically observed that "[neuropathy] has not impeded her from all her activities," and that, with treatment behind her, "[s]he is also

2

faced with the prospect of obtaining a job, which we all know is difficult in this environment."
Id. During the period under review, Plaintiff was also followed by an oncologist, Dr. Naveed
Rana. Tr. 55. Dr. Rana repeatedly confirmed that the residual (from chemotherapy) grade 1
neuropathy in Plaintiff's feet was "very mild." E.g., Tr. 304 (neuropathy "does not interfere with
her daily functioning"); Tr. 339 (same); Tr. 562 ("She has very mild, grade 1 neuropathy . . . .").

The record reflects only two post-onset instances when Plaintiff complained of bowel
issues – in June and July 2013, shortly after she filed her application for Social Security benefits.

First, on June 17, 2013, Plaintiff followed up with Dr. Eric Berthiaume, who had
performed a dilation of a stricture in her colon during a colonoscopy on January 30, 2013. Tr.
435. She told him that she was experiencing rectal urgency, frequent small bowel movements,
and occasional incontinence, with worsening abdominal bloating and lower abdominal cramping.
Tr. 434. According to Dr. Berthiaume's note, "her symptoms may be secondary to re closing
down of the anastomotic stricture." Id. His plan was to "try a different bowel regimen . . . [and]
[i]f ineffective she may need a repeat colonoscopy and dilation." Id. Dr. Berthiaume instructed
Plaintiff to "call back with a report on her symptoms within the next few weeks." Id. The record
does not reflect that Plaintiff needed a repeat colonoscopy or that she sought any further
treatment from Dr. Berthiaume arising from fecal incontinence.

The second reference to fecal incontinence appears shortly after Plaintiff mentioned it to
Dr. Berthiaume; on July 16, 2013, the same day that Dr. Tverskaya signed an opinion in
connection with Plaintiff's disability application, Plaintiff told Dr. Tverskaya that she was having
problems with her bowels with "accidents 2-3 times a week"; Dr. Tverskaya noted that she
would follow up with her surgeon. Tr. 311. It is not clear whether this was meant as a

3

suggestion to follow up with Dr. Berthiaume. There is no record indicating that Plaintiff followed up with any other physician apart from Dr. Berthiaume.

After this interlude, the issue of fecal incontinence is not mentioned in the medical record again.

At the hearing before the ALJ on November 3, 2014, Plaintiff testified that she could drive without difficulty and do chores like laundry and some cooking. Tr. 36, 48. Nevertheless, she claimed that she suffers from the residual effect of chemotherapy, including fatigue, anxiety, neuropathy in her legs, tingling in her fingers and feet, the need to go to the bathroom at least three or four times a day and occasional "accidents." Tr. 41-43. Despite these challenges, she testified that she enjoyed spending time with her daughter, including going with her to the mall and trick-or-treating for Halloween, and using the computer or cell phone for Facebook, playing "maybe a couple hours a day." Tr. 47-50.

## II. Travel of the Case

On June 10, 2013, Plaintiff applied for disability insurance benefits and Supplemental Security Income, alleging disability onset beginning January 30, 2012, based on anxiety, cancer (stage unknown) and colon problems. Tr. at 70-113, 171-81. Her application was initially denied on October 22, 2013, and upon reconsideration on February 14, 2014. Tr. 90-91, 112-13. After a hearing, Tr. 30-61, the ALJ found at Step Two that only anxiety amounts to a severe impairment. Based on a RFC permitting a full range of work at all exertional levels, but limited to only simple, routine tasks and instructions, and in reliance on testimony from a vocational expert, the ALJ concluded that she was not disabled during the period in issue. Tr. 24.

## III. Issues Presented

Plaintiff's motion for reversal rests on the following arguments: 1) the ALJ's Step Two determination is unsupported by substantial evidence; 2) the ALJ's RFC finding is not supported by substantial evidence; and 3) the ALJ's Step Five determination is unsupported by substantial evidence.

## IV. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999). Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).

The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). Thus, the Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148,

153 (1st Cir. 1989)). "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)). A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 404.1529(a).

## V.     Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(I); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A.     Treating Physicians and Other Sources

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there are good reasons to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(c). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. Konuch v. Astrue, No. 11-193L, 2012 WL 5032667, at *4-5 (D.R.I. Sept. 13, 2012); 20 C.F.R. § 404.1527(c)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988). The ALJ's decision must

articulate the weight given, providing "good reasons" for the determination.  See Sargent v. Astrue, No. CA 11–220 ML, 2012 WL 5413132, at *7-8, 11-12 (D.R.I. Sept. 20, 2012) (where ALJ failed to point to evidence to support weight accorded treating source opinion, court will not speculate and try to glean from the record; remand so that ALJ can explicitly set forth findings).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(c).  A treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(c)(2).  If a treating source is not accorded controlling weight, the ALJ must apply the factors listed in 20 C.F.R. § 404.1527(c).  As SSR 96-2p provides:

The notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.  SSR 96-2p, 1996 WL 374188 (July 2, 1996).  The regulations confirm that, "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  20 C.F.R. § 404.1527(c)(2).  However, where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

7

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(d). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity ("RFC"), see 20 C.F.R. §§ 404.1545-1546, or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(d); see also Dudley v. Sec'y of Health & Human Servs., 816 F.2d 792, 794 (1st Cir. 1987) (per curiam).

### B. The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520. First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(e)-(f). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. 20 C.F.R. § 404.1520(g). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Wells v. Barnhart,

267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to both DIB and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

### C. Developing the Record

Social Security proceedings are "inquisitorial rather than adversarial." Sims v. Apfel, 530 U.S. 103, 110-11 (2000); Miranda v. Sec'y of Health, Educ. & Welfare, 514 F.2d 996, 998 (1st Cir. 1975) (social security proceedings "are not strictly adversarial."). The ALJ and the Appeals Council each have the duty to investigate the facts and develop the arguments both for and against granting benefits. Sims, 530 U.S. at 110-11. The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Evangelista, 826 F.2d at 142. Courts in this Circuit have been clear about the responsibility that the Commissioner bears for adequate development of the record. Id.; see Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 80-81 (1st Cir. 1982); Currier v. Sec'y of Health, Educ. & Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

## VI. Analysis

### A. Step Two Determination

The medical severity of a claimant's impairment is considered at Step Two of the five step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4)(ii). The Step Two severity test

9

has been interpreted as no more than a *de minimis* screening policy. McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1122, 1125 (1st Cir. 1986). "An impairment is 'non-severe' when the medical evidence establishes only a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" Cookson v. Colvin, 111 F. Supp. 3d 142, 150 (D.R.I. 2015). Ultimately, the assessment of a severe impairment at Step Two is dependent upon the existence of objective medical evidence establishing that the impairment at issue causes more than minimal work-related functional limitations. See White v. Astrue, Civil Action No. 10-10021-PBS, 2011 WL 736805, *6 (D. Mass. Feb. 23, 2011) (citing Bowen v. Yuckert, 482 U.S. 137, 141-42 (1987)). Further, the evidence must establish an impairment that persists at the severe level for more than twelve months. See Mulero v. Comm'r of Soc. Sec., 108 F. App'x 642, 644 (1st Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(ii).

Plaintiff challenges the ALJ's finding that the side effects of chemotherapy, neuropathy and bowel problems,[2] were not sufficiently serious for a sufficient period of time to clear the Step Two bar. Tr. 16-17. To support the argument, Plaintiff relies on opinions from two treating sources. First, she points to the June 15, 2012, opinion of Dr. Przygoda, written while she was under his care for chemotherapy, that she could not work during treatment, which was expected to continue for three more months. Second, she has provided two opinions from her primary care physician, Dr. Tverskaya, both of which reflect extreme limitations persisting through at least June 2014, when the second was signed. Tr. 384, 323, 432.

In reliance on the medical interpretation of the evidence provided by the non-examining physicians (Dr. Donn Quinn and Dr. Youssef Georgy), the ALJ's decision accurately observes that Dr. Przygoda's opinion is limited to the period of chemotherapy, which ended in September

---

[2] While Plaintiff mentions that the ALJ did not find arthritis in her right knee to be a severe impairment, she has not argued that the determination is tainted by error. Accordingly, the Court has not considered it.

10

2012, well short of the twelve-month minimum for an impairment to be considered severe at Step Two.  Tr. 17.  Indeed, once chemotherapy was over, Dr. Przygoda himself opined on September 30, 2012, that Plaintiff's only remaining issue was neuropathy, which he stated did not interfere with her activity level, decrease her quality of life or impeded her from activities; to the contrary, Dr. Przygoda suggests that her difficulty in working will be finding a job "in this environment."  Tr. 358.

As to Dr. Tverskaya, the ALJ correctly notes that her extreme opinions are entirely inconsistent with the medical evidence, including her own treatment notes.  Tr. 18.  For example, both of Dr. Tverskaya's opinions state that Plaintiff's leg pain would preclude her from walking more than a block, standing or walking for more than thirty minutes at one time or more than two hours in a work day.  Tr. 323, 432.  Yet Dr. Rana, who is the treating oncologist, opined in the same month as Dr. Tverskaya's second opinion, that the neuropathy was only an issue at night; in a summary to-whom-it-may-concern note written a few months later, Dr. Rana opined that the neuropathy was "very mild, grade 1."[3]  Tr. 562.  Apart from the medical records written on the days that she signed her two opinions, Dr. Tverskaya's contemporaneous notes reflect, for example, that Plaintiff reported improvement with leg pain once she began Elavil, Tr. 366, and that it bothered her at night, Tr. 425.  There is no suggestion either in Plaintiff's complaints to Dr. Tverskaya or in Dr. Tverskaya's clinical observations, of the extreme findings noted in her opinions.

---

[3] The Commissioner cites to a source that clarifies that "grade 1" neuropathy is the least serious.  See Janet L. Abrahm, M.D., Ask the Hematologist: Assessment and Management of Patients with Chemotherapy-Induced Peripheral Neuropathy, The Hematologist (Am. Soc'y of Hematology, Washington, D.C.), May-June 2014, at 4-5, *available at* http://www.hematology.org/Thehematologist/Ask/2728.aspx (Grade 1 denotes "[a]symptomatic or loss of deep tendon reflexes or paresthesia" or "[a]symptomatic clinical or diagnostic observations only; intervention not indicated.") (viewed Apr. 19, 2017).

11

Plaintiff's argument that Dr. Tverskaya's records constitute substantial evidence of a severe bowel problem that persisted for more than twelve months is equally unavailing. To support the argument, Plaintiff points to the references to occasional fecal incontinence following a dilation procedure, which was addressed by Dr. Berthiaume in June 2013. Plaintiff also relies on the repeated reference in Dr. Tverskaya's notes to "constipation," which appears from March to June 2014; however, these notes also uniformly reflect that Dr. Tverskaya considered the condition "stable." Tr. 415, 419, 421, 425. Moreover, it was Dr. Berthiaume who addressed the trouble with fecal incontinence; he advised Plaintiff to return if it persisted and there is no evidence that she ever did. It disappears from the medical record, so that by the end of July 2013, Plaintiff told Dr. Rana that she was doing well with no new complaints and no diarrhea; following a clinical examination, Dr. Rana concluded that "[s]he has been doing well." Tr. 328, 330. The only contrary evidence is Plaintiff's testimony in support of her disability application, as to which the ALJ made the unchallenged finding that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 20.

Based on the foregoing, I find no error in the ALJ's conclusion that little weight should be afforded to the opinions of Dr. Tverskaya, as well as to the opinion of Dr. Przygoda to the extent that Plaintiff argues that the Przygoda opinion reflects disabling limitations persisting for more than twelve months. Further, I also find no error in the ALJ's heavy reliance ("significant weight") on the opinions of the non-examining State agency medical consultant, Dr. Quinn, who completed his review of the record in September 2013 and Dr. Georgy, who completed his review of the record in January 2014. Both concluded that the limitations caused by colon cancer were severe for a period of less than twelve months. Tr. 74, 84, 96, 106. Plaintiff does

not point to subsequently submitted medical evidence that establishes a worsening of her condition after their reviews were concluded. See Oliver v. Astrue, No. 1:11-cv-390-GZS, 2012 WL 3023329, at *6 (D. Me. June 26, 2012) (plaintiff bears burden to establish how ALJ's reliance on state agency physicians' opinions is undermined by later medical evidence).

In reliance on these findings, I conclude that the ALJ's Step Two determination that only anxiety amounts to a severe impairment is well supported by substantial evidence and recommend that it be affirmed.

### B. RFC Finding and Step Five Determination

The Court need not linger long on Plaintiff's challenge to the ALJ's RFC determination and the Step Five finding that is based on it. To support her argument, Plaintiff simply repeats the same contentions about the opinions of Drs. Przygoda and Tverskaya;[4] these arguments should be rejected for the same reasons that are set out above. See Monroe v. Barnhart, 471 F. Supp. 2d 203, 211-12 (D. Mass. 2007) (as long as ALJ explained decision to afford less weight to treating physicians, no error in reliance on non-examining source based on substantial evidence). Plaintiff also fails to present cogent reasons why the ALJ should have recontacted Dr. Przygoda, whose post-chemotherapy medical note reflects his opinion that Plaintiff suffered from no limitations that would impact her activity level or her quality of life. Tr. 358. Similarly, Plaintiff's argument that the psychologist who performed the consulting examination (Dr. Louis Cerbo) should have been recontacted to fill in the gaps in Plaintiff's anxiety-based limitations

---

[4] There is one exception: Dr. Tverskaya's first opinion included a mental capacity assessment, which reflects her opinion that Plaintiff was markedly impaired in the ability to sustain concentration and persistence, to maintain a schedule, to carry out detailed instructions or to travel in unfamiliar places. Tr. 325-27. The ALJ afforded these opinions little weight based on the complete absence of any clinical findings to support them, including in Dr. Tverskaya's own records, which reflect largely normal mental status examinations. E.g., Tr. 366 ("alert and oriented x 3 . . . memoty NL, mood NL, no suicidal or homicidal ideations . . . anxiety/depression- improving, cont. Celexa"); Tr. 425 ("alert and oriented x3 . . . anxiety/depression- improving, cont. Celexa"). There is no error in the ALJ's determination to afford little weight to Dr. Tverskaya's opinion reflecting marked mental limitations.

falls flat – that task was performed adequately by the two psychologists who performed the file review (Dr. Jeffrey Hughes and Dr. Mary Burkhart). With no treating relationship, Dr. Cerbo could not add more. Plaintiff's problem is not the ALJ's failure to develop the record, but the record's lack of any reference to mental health treatment beyond the medication prescribed by Dr. Tverskaya, her primary care physician. Based on the analysis of the record performed by the examining experts, the ALJ had ample evidence to support his finding that Plaintiff was capable of work involving simple tasks over the course of a normal work week. Tr. 77, 87, 99, 109. And Plaintiff is simply wrong in arguing that the ALJ ignored her physical complaints in formulating the RFC.[5] See Tr. 20 (ALJ considers Plaintiff's statements about her limitations in connection with RFC finding).

I linger on Plaintiff's argument that a 2015 decision from the Fourth Circuit requires remand because there is somehow a taint rendering erroneous the ALJ's reliance on the non-examining psychologists' finding that Plaintiff's moderate limitation in her ability to sustain concentration, persistence or pace permits her to sustain simple work. Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015). Plaintiff cites Mascio for the proposition that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace" by restricting the claimant to "simple, routine tasks or unskilled work.'" Id. However, as courts in this Circuit have recognized, Mascio simply reflects the court's traditional task of reviewing the record for evidence to support the finding that a claimant is capable of simple work. See Le v. Colvin, Civil Action No. 3:15-cv-30157-KAR, 2016 WL 7104835, *11-12 (D. Mass. Dec. 5, 2016) (ALJ

---

[5] Citing Lottinville v. Colvin, No. CA 13-572-M-PAS, 2014 WL 4562984, at *8 (D.R.I. Sept. 15, 2014), the Commissioner concedes that the ALJ's acknowledgment of his obligation to consider the combined impact of Plaintiff's severe and non-severe impairments could have been more clearly stated. Nevertheless, I find no error. The ALJ's Step Two discussion of the physical impairments is robust, Tr. 15-18, and the RFC analysis recites Plaintiff's claims of physical limitations, Tr. 20, and specifically adverts to consideration of the entirety of the evidence of record, Tr. 19.

may reflect moderate limits in concentration, persistence and pace with RFC for simple work as long as the record supports that conclusion); Newcomb v. Colvin, No. 2:15-cv-463-DBH, 2016 WL 3962843, at *7 (D. Me. July 22, 2016) (ALJ may explain how limitation to simple work addresses moderate limitation in concentration or persistence). Here, the ALJ did rely on substantial evidence in that he afforded "significant weight" to the opinions of the expert examining psychologists, whose findings were derived from a review of the entirety of the record as of the date of the review, including Plaintiff's statements about her activities, Dr. Tverskaya's treating record and first opinion, as well as the report prepared by the consulting psychologist, Dr. Cerbo. See Hayes v. Astrue, No. 2:10-cv-42-DBH, 2010 WL 5348757, at *3 & n.4 (D. Me. Dec. 20, 2010) (opinion of SSA file reviewing expert provides substantial evidence grounding the ALJ's mental RFC findings).

Based on the foregoing, I find no error in the ALJ's RFC determination. Since Plaintiff's sole argument about the Step Five determination is that it rested on a tainted RFC, my RFC finding compels the rejection of Plaintiff's Step Five challenge as well. Accordingly, I recommend that the Court affirm the determination that Plaintiff was not disabled during the period in issue in this case.

## VII. Conclusion

Based on the foregoing analysis, I recommend that Plaintiff's Motion for Order Reversing the Commissioner's Decision (ECF No. 9) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 12) be GRANTED. Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner

constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
April 19, 2017